# IN THE COURT OF APPEALS OF IOWA

No. 22-1640
Filed December 7, 2022

**IN THE INTEREST OF P.W., C.W., M.W., L.W., and H.W.,**
**Minor Children,**

**J.W., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Eric J. Nelson, District Associate Judge.

A mother appeals from a permanency order establishing a guardianship for her five children. **AFFIRMED.**

Amanda Heims, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Amy Garreans of Garreans Law L.L.C., Council Bluffs, attorney for minor child H.W.

Mandy L. Whiddon, Omaha, Nebraska, guardian ad litem for all five minor children and attorney for minor children P.W., C.W., M.W., and L.W.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

Because of initial concerns over drug use and domestic abuse, P.W. (born in 2019), C.W. (2015), M.W. (2013), L.W. (2012), and H.W. (2007) were adjudicated children in need of assistance (CINA).  To protect the children from issues not yet resolved, at the court's final permanency hearing, the juvenile court placed the children in a guardianship with their maternal grandmother and closed the CINA case.  Their mother, J.W., argues the children should have been returned to her care; but, because the mother continues to live with the children's father in violation of a criminal no-contact order (NCO) that prohibits either her or the children from having contact with him and she has not followed through with recommended services, we affirm the juvenile court's order establishing a guardianship.

In August 2020, the father[1] was arrested after assaulting the mother in front of the children.  This was the father's fifth arrest involving domestic violence. During the investigation of the case, the mother and children provided further examples of violence he committed against them.  An NCO was put in place and extended when the father was convicted and sentenced to probation later that year; the mother and all five children are protected parties.

The following April, the father was arrested for living in the family home in violation of the NCO.  The mother stated the father had just arrived at the house when the police arrived, but the father admitted he had been living there for days. Upon the father's arrest, he tested positive for methamphetamine.  A CINA petition

---

[1] The father was also a party in the case, but is not a part of this appeal.

was filed soon after, and the mother agreed to accept services from the Iowa Department of Health and Human Services (DHHS).[2]

The children remained in the family home with the mother until June. But when the mother continued to have contact with the father, the juvenile court granted a request for temporary removal. It also ordered the mother and children to undergo drug testing. The mother's test came back positive for methamphetamine, amphetamine, and oxycodone; four of the five children tested positive for methamphetamine. After the children were removed from the mother's care, they were eventually placed with their maternal grandmother where they remained at the time of the final permanency hearing.

At the time of the CINA adjudication, the mother was ordered to participate in family centered services, submit to random drug testing, undergo substance-abuse and mental-health evaluations and follow their recommendations, and sign releases for DHHS to receive both evaluations and speak with all of her providers. In September 2021, she was directed to attend a "boiling points" anger management course; in June 2022, she was also ordered to complete an updated psychiatric evaluation and maintain safe and stable housing suitable for the children.

---

[2] In 2022, the Iowa legislature merged the department of human services with the department of public health into the Iowa Department of Health and Human Services, with the transition starting July 1, 2022. *See* 2022 Iowa Acts ch. 1131 § 51.

In September, the mother testified she was still living with the father—in violation of the NCO[3]—with no interest in finding a different arrangement. She had not complied with the juvenile court's orders to receive an updated psychiatric evaluation;[4] and, though she finished a separate four-hour anger-management course, she had not completed the boiling points course. Throughout the pendency of the case, the mother has refused some services. There are also reports of her showing up to the children's school events without prior approval, sometimes with the father, which led to her being banned from the school. But there were no reports of positive drug tests and there is a clear bond between the mother and the children.[5] The juvenile court placed the children in a guardianship with the maternal grandmother and closed the CINA action, and the mother now appeals.

Since June of 2021, the children have lived with their grandmother and for the most part, done well. But the mother argues the juvenile court should have returned the children to her rather than placing them in a guardianship. She points to her participation with services and the children's wishes to return to their parents' home and asks that we remand to the juvenile court with instructions to return the children to her custody and close the CINA action.

---

[3] The mother testified she was unaware there was a standing NCO because she had dropped the civil NCO she personally previously sought; the juvenile court found this testimony not credible.

[4] In June 2022, the family's DHHS caseworker voiced concern about the mother's honesty during the interview portion of her first psychiatric evaluation, so the juvenile court ordered the mother to complete a second interview and sign releases so DHHS could provide additional information to be considered in the evaluation.

[5] The older children, particularly the oldest child, have been clear they do not want the parents' rights terminated.

Permanency orders are reviewed de novo. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). We give weight to the juvenile court's finding of facts but are not bound to them. *Id.*

After a permanency hearing, Iowa Code section 232.104(2)(d)(2) (Supp. 2022)[6] allows a juvenile court to "transfer guardianship and custody of the [children] to an adult relative, a fictive kin, or another suitable person." To do this, the court must find convincing evidence that (1) "termination of the parent-child relationship would not be in the best interest of the child[ren]," (2) "[s]ervices were offered to the child[ren]'s family to correct the situation which led to the child[ren]'s removal from the home," and (3) "the child[ren] cannot be returned to the child[ren]'s home." Iowa Code § 232.104(4). The mother challenges the third requirement.

We agree with the juvenile court that the children could not be returned to the mother's care. She has been not only resistant, but antagonistic toward services. But even if she had completed the updated psychiatric evaluation and boiling points course, she cannot say she has safe housing while she is living with the father in violation of an NCO protecting her and the children. And while "we do not require compliance for compliance's sake" from parents working toward reunification, *In re G.B.*, No. 22-0439, 2022 WL 1657190, at *5 (Iowa Ct. App. May 25, 2022), these violations were the reason the children were originally adjudicated CINA. As the mother has no intention of separating herself from the father in spite

---

[6] The juvenile court used an earlier version of the code, but the law changed, effective July 1, 2022, before the permanency hearing was held and the order was filed. *See* 2022 Iowa Acts ch. 1098 § 52. There were no substantive changes effecting our analysis; we use the 2022 supplement.

of his repeated abuse, the court was right to find the children could not be returned to the home.  *See In re L.B.*, 530 N.W.2d 465, 468 (Iowa 1995) (concluding "the permanency order was the result of [the mother's] inability or unwillingness to address the issue of domestic violence in her home"); *In re A.L.*, No. 22-0311, 2022 WL 1482731, at * 3 (Iowa Ct. App. May 11, 2022) (finding a mother's inability to follow NCOs protecting herself and her child undermined "her ability to protect [the child] from exposure to continued domestic violence").  The juvenile court was then authorized to establish a guardianship pursuant to section 232.104(2)(d)(2).

Because there was convincing evidence the children could not be returned to the home, we affirm.

**AFFIRMED.**